JUDGMENT

~~ORIGINAL~~

Priority Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT
JUL 22 2002
2002
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

----------------

LODGED
CLERK, U.S. DISTRICT COURT
JUL 10 2002
CENTRAL DISTRICT OF CALIFORNIA

NO. 00-55784
CT/AG#: CV-99-04264-AHM (RNB)

MICHAEL J. HASON, M.D.

    Plaintiff - Appellant

v.

MEDICAL BOARD OF CALIFORNIA; DEPARTMENT OF CONSUMER AFFAIRS, STATE OF CALIFORNIA; ARLENE ADAMS, the Director of the Department of Consumer Affairs of the State of California; NEIL FIPPIN, individually, & as the Manager, Licensing Program of the Medical Board of the State of California; MELINDA ACOSTA, individually & as an official of the Medical Board of the State of California; RON JOSEPH, individually & as Executive Director of the Medical Board of the State of California & as Director of the Department of Consumer Affairs of the State of California; BRUCE HASENKAMP, individually & as President of the Division of Licensing of the Medical Board of the State of California; IRA LUBELL, M.D., individually & as President of the Division of Medical Quality of the Medical Board of the State of California; CAROLE H. HURVITZ; ANABEL A. IMBERT; RAQUEL D. ARIAS, Dr.; KLEA D. BERTAKIS, Dr.; JACK BRUNER, DR.; DANIEL LIVINGSTON; KAREN MCELLIOT, ALAN E. SHUMACHER, Dr.; KIP S. SKIDMORE, individually & as Member of the Medical Board of the State of California's Division of Medical Quality; THOMAS A. JOAS, Dr.; KAREN MCELLIOTT, individually & as Officer of the Medical Board of the Sttae of California & its Division of Licensing; BERNARD ALPERT, individually & as Officer of the Medical Board of the State of California & its Division of Licensing; MICHAEL I. SIDLEY, individually & as Executive of the Medical Board of the State of California's Division of Licensing; RAJA TOKE, Dr., individually & as Executive of the Medical Board of the State of California's Division of Licensing; THE STATE OF CALIFORNIA & SENIOR INVESTIGATOR

    Defendants - Appellees



NO. 00-55980
CT/AG#: CV-99-04264-AHM

ENTERED ON ICMS
JUL 23
CV

MICHAEL J. HASON, M.D.

        Plaintiff - Appellant

  v.

MEDICAL BOARD OF THE STATE OF CALIFORNIA; DEPARTMENT OF CONSUMER AFFAIRS, STATE OF CALIFORNIA; ARLENE ADAMS, the Director of the Department of Consumer Affairs of the State of California; NEIL FIPPIN, individually and as the Manager, Licensing Program of the Medical Board of the State of California; MELINDA ACOSTA, individually and as a official of the Medical Board of the State of California; RON JOSEPH, individually and as Executive Director of the Medical Board of the State of California and as Director of the Department of Consumer Affaris of the State of California; BRUCE HASENKAMP, individually and as President of the Division of Licensing of the Medical Board of the State of California; IRA LUBELL, M.D., individually and as President of the Division of Medical Quality of the Medical Board of the State of California; CAROLE H. HURVITZ; ANABEL A. IMBERT; RAQUEL D. ARIAS, M.D.; KLEA D. BERTAKIS, M.D.; JACK BRUNER, M.D.; DANIEL LIVINGSTON; KAREN MCELLIOTT; ALAN E. SCHUMACHER, M.D.; KIP S. SKIDMORE, individually and as Members of the Medical Board of the State of California's Division of Medical Quality; THOMAS A. JOAS, M.D.; KAREN MCELLIOTT, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; BERNARD ALPERT, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; MICHAEL I. SIDLEY, individually and as Executive of the Medical Board of the State of California's Division of Licensing; RAJA TOKE, M.D., individually and as Executive of the Medical Board of the State of California's Division of Licensing; THE STATE OF CALIFORNIA; SENIOR INVESTIGATOR; MEDICAL BOARD OF CALIFORNIA

        Defendants - Appellees

---------------------

        APPEAL FROM the United States District Court for the Central District of California, Los Angeles .

        THIS CAUSE came on to be heard on the Transcript of the Record from the United States District Court for the Central District of California, Los Angeles

and was duly submitted.

ON CONSIDERATION WHEREOF, It is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is REVERSED AND REMANDED.

Filed and entered          February 12, 2002



A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST
JUL 0  2002
by: _____
        Deputy Clerk

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL J. HASON, M.D.,
    *Plaintiff-Appellant,*

v.

MEDICAL BOARD OF CALIFORNIA; DEPARTMENT OF CONSUMER AFFAIRS, STATE OF CALIFORNIA; ARLENE ADAMS, the Director of the Department of Consumer Affairs of the State of California; NEIL FIPPIN, individually, & as the Manager, Licensing Program of the Medical Board of the State of California; MELINDA ACOSTA, individually & as an official of the Medical Board of the State of California; RON JOSEPH, individually & as Executive Director of the Medical Board of the State of California & as Director of the Department of Consumer Affairs of the State of California; BRUCE HASENKAMP, individually & as President of the Division of Licensing of the Medical Board of the State of California; IRA LUBELL, M.D., individually & as President of the Division of Medical Quality of the Medical Board of the State of California; CAROLE H. HURVITZ;

No. 00-55784
D.C. No.
CV-99-04264-AHM

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY WEST GROUP—SAN FRANCISCO—(800) 888-3600

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2002 by West Group

9091

ANABEL A. IMBERT; RAQUEL D.
ARIAS, Dr.; KLEA D. BERTAKIS, Dr.;
JACK BRUNER, DR.; DANIEL
LIVINGSTON; KAREN McELLIOT;
ALAN E. SHUMACHER, Dr.; KIP S.
SKIDMORE, individually & as
Member of the Medical Board of
the State of California's Division
of Medical Quality; THOMAS A.
JOAS, Dr.; KAREN McELLIOTT,
individually & as Officer of the
Medical Board of the State of
California & its Division of
Licensing; BERNARD ALPERT,
individually & as Officer of the
Medical Board of the State of
California & its Division of
Licensing; MICHAEL I. SIDLEY,
individually & as Executive of the
Medical Board of the State of
California's Division of Licensing;
RAJA TOKE, Dr., individually & as
Executive of the Medical Board of
the State of California's Division
of Licensing; THE STATE OF
CALIFORNIA & SENIOR
INVESTIGATOR,
              *Defendants-Appellees.*

Michael J. Hason, M.D.,
    *Plaintiff-Appellant,*

v.

Medical Board of the State of California; Department of Consumer Affairs, State of California; Arlene Adams, the Director of the Department of Consumer Affairs of the State of California; Neil Fippin, individually and as the Manager, Licensing Program of the Medical Board of the State of California; Melinda Acosta, individually and as an official of the Medical Board of the State of California; Ron Joseph, individually and as Executive Director of the Medical Board of the State of California and as Director of the Department of Consumer Affairs of the State of California; Bruce Hasenkamp, individually and as President of the Division of Licensing of the Medical Board of the State of California; Ira Lubell, M.D., individually and as President of the Division of Medical Quality of the Medical Board of the State of California; Carole H. Hurvitz;

No. 00-55980

D.C. No.
CV-99-04264-AHM

ORDER

ANABEL A. IMBERT; RAQUEL D.
ARIAS, M.D.; KLEA D. BERTAKIS,
M.D.; JACK BRUNER, M.D.; DANIEL
LIVINGSTON; KAREN MCELLIOTT;
ALAN E. SCHUMACHER, M.D.; KIP
S. SKIDMORE, individually and as
Members of the Medical Board of
the State of California's Division
of Medical Quality; THOMAS A.
JOAS, M.D.; KAREN MCELLIOTT,
individually and as Officer of the
Medical Board of the State of
California and its Division of
Licensing; BERNARD ALPERT,
individually and as Officer of the
Medical Board of the State of
California and its Division of
Licensing; MICHAEL I. SIDLEY,
individually and as Executive of
the Medical Board of the State of
California's Division of Licensing;
RAJA TOKE, M.D., individually and
as Executive of the Medical Board
of the State of California's
Division of Licensing; THE
STATE OF CALIFORNIA; SENIOR
INVESTIGATOR; MEDICAL BOARD OF
CALIFORNIA,
    *Defendants-Appellees.*

Filed June 26, 2002

Before: Alfred T. Goodwin, J. Clifford Wallace and
Sidney R. Thomas, Circuit Judges.

*Klingler v. Dir., Dep't of Revenue*, 281 F.3d 776, 777 (8th Cir. 2002) (affirming pre-*Garrett* decision holding that Title II did not validly abrogate State sovereign immunity); *Reickenbacker*, 274 F.3d at 983; *Thompson*, 278 F.3d at 1034; *Erickson v. Bd. of Governors of State Colls. and Univs.*, 207 F.3d 945, 948 (7th Cir. 2000) (questioning the continued authority of *Crawford v. Indiana Department of Corrections*, 115 F.3d 481, 487 (7th Cir. 1997), which upheld Title II as a valid abrogation of State sovereign immunity), *cert. denied*, 531 U.S. 1190 (2001); *see also Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 812, 815-16 (6th Cir. 2002) (en banc) (agreeing that Title II is not a valid abrogation of sovereign immunity when Congress is enforcing the Equal Protection Clause, but holding that it is permissible when enforcing the Due Process Clause); *Garcia v. S.U.N.Y. Health Scis. Center*, 280 F.3d 98, 110-12 (2d Cir. 2001) (holding that Title II actions may only be brought against States if the plaintiff can establish that the "violation was motivated by discriminatory animus or ill will based on the plaintiff's disability"); *cf. Brown v. N.C. Div. of Motor Vehicles*, 166 F.3d 698, 707 (4th Cir. 1999) (holding that a regulation enacted pursuant to Title II did not validly abrogate State sovereign immunity).

III

*Clark* and *Dare* have gone the way of the dodo bird and the wooly mammoth, overtaken and relegated to extinction by the course of events. "*Clark* is now outdated—and *Douglas* wrong—for failing to recognize the change in the legal landscape of sovereign immunity." *Douglas*, 285 F.3d at 1226-27 (O'Scannlain, J., dissenting from denial of rehearing en banc). As every circuit to have analyzed the issue now agrees (except, of course, ours), in light of *Garrett*, Title II did not abrogate the Eleventh Amendment immunity of the several States.

We should have taken *Hason* en banc to reconsider, and to overrule, *Clark* and *Dare*. I respectfully dissent.

Order;
Dissent by Judge O'Scannlain

## ORDER

Judge Thomas has voted to deny the petition for rehearing en banc, and Judges Goodwin and Wallace recommended denial.

The full court has been advised of the petition for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for rehearing en banc is DENIED.

O'SCANNLAIN, Circuit Judge, with whom Circuit Judges KOZINSKI, T.G. NELSON, and KLEINFELD join, dissenting from denial of rehearing en banc:

Stubbornly extending enforcement of Title II of the Americans with Disabilities Act ("ADA") against the Nine Western States, today's opinion blithely ignores recent Supreme Court precedent and follows superseded cases of our court instead. It bears repeating: This decision cannot possibly be right. *See Vinson v. Thomas*, 288 F.3d 1145, 1157-58 (9th Cir. 2002) (O'Scannlain, J., dissenting); *see also Douglas v. Cal. Dep't of Youth Auth.*, 285 F.3d 1226, 1226-27 (9th Cir. 2002) (O'Scannlain, J., dissenting from denial of rehearing en banc). Because *Hason* all but invites a grant of certiorari and reversal for putting us out of step with the Supreme Court *and creating a split with every other circuit to have considered the issue*, I must dissent from the order denying en banc rehearing.

I

This opinion reaffirms two prior decisions of this court—*Dare v. California*, 191 F.3d 1167 (9th Cir. 1999), and *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997)—which concluded that Title II validly abrogated the sovereign immunity of the several States. *See Hason v. Med. Bd.*, 279 F.3d 1167, 1170-71 (9th Cir. 2002). In so doing, however, it refuses to deal in a meaningful way with intervening Supreme Court precedent, specifically *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001). This, in a nutshell, is where *Hason* goes astray.

A bit of history is required to see clearly the misstep that this opinion takes.

A

It is beyond dispute that recent decisions of the Supreme Court, including *Garrett*, have fundamentally changed the landscape of Eleventh Amendment jurisprudence. *See, e.g.*, William A. Fletcher, *The Eleventh Amendment: Unfinished Business*, 75 Notre Dame L. Rev. 843, 843-44 (2000). *Garrett* in particular clarified, in extensive detail, the approach that a court must take when addressing a claim that the ADA validly abrogated State sovereign immunity pursuant to section 5 of the Fourteenth Amendment.[1] *Garrett* drew on *City of Boerne v. Flores*, 521 U.S. 507 (1997), which made clear that it was up to the courts to "define the substance of [the] constitutional

---

[1] To be more precise, in *Garrett* the Court explicitly addressed only the question of whether Title I of the ADA, 42 U.S.C. § 12111 *et seq.*, which prohibits discrimination against the disabled with regard to employment, validly abrogated the States' sovereign immunity. It did not address whether Title II, 42 U.S.C. § 12131 *et seq.*, which prohibits discrimination against the disabled by public entities, did so. *Garrett*, 531 U.S. at 360 n.1. As I will explain in due course, however, it is the approach set forth in *Garrett*, rather than any specific teachings about Title I or Title II, which is crucial for purposes of my analysis.

this. The discussion in the opinion dealing with abrogation is short; indeed, it comprises all of two paragraphs. *See Hason*, 279 F.3d at 1170-71. It can be summarized as follows: (1) *Clark* and *Dare* held Title II validly abrogated sovereign immunity; (2) *Garrett* did not expressly deal with Title II; it dealt only with Title I, and reserved judgment on Title II; *ergo* (3) *Clark* and *Dare* are good law.

This logic breaks down between steps (2) and (3). To be sure, in *Garrett* the Court expressly declined to decide whether Congress validly abrogated state sovereign immunity in enacting Title II of the ADA. *See Garrett*, 531 U.S. at 360 n.1. But it does *not* follow that because *Garrett* did not invalidate Title II, our prior case law upholding it remains relevant. For it is not just the *holding* of *Garrett* that matters; we must also be mindful of the *approach* the Court set forth there. As the foregoing analysis makes clear, the blunt approach taken in *Clark* and *Dare* has now been supplanted with a new, more nuanced inquiry. If we are to follow *Garrett* faithfully, we must re-analyze our prior precedents accordingly.

Two of our sister circuits have already recognized as much, and have re-analyzed *their* pre-*Garrett* precedents holding that Title II validly abrogated States' sovereign immunity. Each has concluded that Title II did not abrogate sovereign immunity—old circuit precedents to the contrary notwithstanding. *See Reickenbacker*, 274 F.3d at 981 (concluding that *Garrett* "effectively overruled" prior circuit precedent holding that Title II validly abrogated State sovereign immunity); *Thompson v. Colorado*, 278 F.3d 1020, 1034 (10th Cir. 2001), *cert. denied*, ___ S. Ct. ___, 2002 WL 83622 (U.S. May 20, 2002).

Indeed, *Hason*'s holding, that Title II validly abrogated States' sovereign immunity, period, splits us from seven of our peers that have considered the issue in the post-*Garrett* world. *Every one*, besides us, has gotten the message that something more nuanced is required; we now stand alone. *See*

guarantee[ ]" that Congress purported to enforce, *Garrett*, 531 U.S. at 365 (citing *Boerne*, 521 U.S. at 519-24), and that "§ 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end,' " *id.* (citing *Boerne*, 521 U.S. at 520). But *Garrett* also elaborated on the *Boerne* analysis. For instance, *Garrett* made clear that once a court has "determined the metes and bounds of the constitutional right in question," it must examine "whether Congress identified a history and pattern of unconstitutional ... discrimination *by the States* against the disabled." *Garrett*, 531 U.S. at 368 (emphasis added). A showing of discrimination against the disabled in general, or discrimination by local governments rather than the States themselves, will not do. *Id.* at 368 ("Just as § 1 of the Fourteenth Amendment applies only to actions committed 'under color of state law,' Congress' § 5 authority is appropriately exercised only in response to state transgressions."); *id.* at 368-69 (explaining that "[i]t would make no sense to consider constitutional violations on" the part of local governments "when only the States are the beneficiaries of the Eleventh Amendment").

Moreover, *Garrett* makes clear that generalizations about disability discrimination and how the ADA is designed to remedy it are inadequate; instead, a court must "dissect[ ] the statutory regime in question and carefully compare[ ] it to the baseline definition of constitutional action under the Fourteenth Amendment." *Reickenbacker v. Foster*, 274 F.3d 974, 981 (5th Cir. 2001). Indeed, "*Garrett* specifically focused on the burdens of proof, exceptions, and defenses available in Title I of the ADA in order to find that 'the rights and remedies created by the ADA against the States raise the same sort of concerns as to congruence and proportionality as were found in [*Boerne*].' " *Id.*

B

*Garrett*, then, refined the abrogation inquiry set out in *Boerne*. Regrettably, however, both cases on which *Hason*

Having established the ADA's congruence with Congress's power to enforce the Equal Protection Clause, we turn to proportionality. In so doing, we reiterate the importance of deference to Congress in this analysis. The Supreme Court has specifically found protections for people with disabilities to be an area in which Congressional judgment should be given great deference. *See* [*Cleburne*, 473 U.S. at 442-43]. The ADA is thus an appropriate exercise of § 5 powers if Congress enacted it in response to a widespread problem of unconstitutional discrimination that includes state programs and services and if the ADA's provisions are proportional to the scope of that discrimination.

As noted above, Congress made extensive factual findings regarding the widespread arbitrary and invidious discrimination which disabled people face. *See* 42 U.S.C. § 12101(a). The ADA's particular provisions for each sector then indicate specifically the discrimination which is forbidden and the conduct needed to remedy the discrimination. *See* 42 U.S.C. § 12101 *et seq*. Although Title II's provisions may prohibit some State conduct which would pass muster under rational basis review, the Title's focus is on eliminating the discrimination outlined in the factual findings.

*Id.* at 1175 (footnotes omitted). Again, this sort of blanket generalization, coupled this time with a generous helping of deference to Congress, stands in stark contrast to the provision-by-provision comparison with the constitutional baseline that *Garrett* requires.

II.

In light of *Garrett*, then, it is clear that our pre-*Garrett* Title II precedents are outdated. Yet *Hason* refuses to acknowledge

relies—*Clark* and *Dare*—were handed down before *Garrett* was decided. Accordingly, they do not undertake the searching inquiry that *Garrett* requires.

1

In *Clark*, we concluded that the ADA, as a whole, validly abrogated the States' sovereign immunity.[2] We first recognized, correctly, that in *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985), the Supreme Court "held that the disabled are protected against discrimination by the Equal Protection Clause." *Clark*, 123 F.3d at 1270. But from there the analysis went astray, at least as seen in hindsight through the lens of *Garrett*. Reading the ADA at its most general level, we next observed that the purpose of the ADA was "to prohibit discrimination against the disabled," *id.*, and that "Congress explicitly found that persons with disabilities have suffered discrimination," *id.* Consequently, we decided that the ADA was "within the scope of appropriate legislation under the Equal Protection Clause as defined by the Supreme Court," *id.*, and added as a general afterthought that the Act does not "provide[ ] remedies so sweeping that they exceed the harms that they are designed to redress." *Id.* We therefore concluded that the ADA was "validly enacted under the Fourteenth Amendment." *Id.*

This minimalist analysis is a far cry from the detailed approach mandated by *Garrett*; its infirmities are manifest. It is devoid of *any discussion whatsoever* of legislative findings of discrimination *by States*—and specifically, by *States* rather than by *local governments*. Nor does it analyze any of the specific provisions of Title II to arrive at its sweeping conclusion

___

[2]The claims at issue in *Clark* were brought under Title II, but we treated the ADA as a whole. This casts further doubt on the continued validity of the opinion because in *Garrett*, the Court expressly refused to conflate the separate, detailed inquiries required for each of Title I and Title II. *See Garrett*, 531 U.S. at 360 n.1.

that Title II does not provide remedies so sweeping that they exceed the harms that they are designed to redress—let alone does it "lay them next to the baseline of what defines constitutional state action under the Fourteenth Amendment," *Reickenbacker*, 274 F.3d at 981, or "dissect[ ] the statutory regime in question and carefully compare[ ] it to the baseline definition of constitutional action under the Fourteenth Amendment," *id.*, as *Garrett* requires.[3]

2

In *Dare*, we attempted to square *Clark*'s result with the Supreme Court's intervening decision in *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627 (1999). But *Dare*'s approach is no more sound than *Clark*'s. Like *Clark*'s, *Dare*'s congruence analysis deals with legislative findings only of discrimination generally—not of discrimination *by States. See Dare*, 191 F.3d at 1174 ("When it enacted the ADA, Congress made specific factual findings of arbitrary and invidious discrimination against the disabled. On the basis of these findings, Congress concluded that the ADA was a necessary legislative response to a long history of arbitrary and irrational discrimination against people with disabilities.") (citation omitted). *Dare*'s proportionality analysis is even less tenable, if one can call it an analysis at all:

___

[3]For a recent example of how a court might perform this detailed analysis in light of *Garrett*, parsing the legislative history of Title II and measuring its provisions against identified instances of discrimination against the disabled by States, see *Panzardi-Santiago v. University of Puerto Rico*, __ F. Supp. 2d __, No. Civ. 95-2316, 2002 WL 638533 (D.P.R. Mar. 19, 2002) (Delgado-Colon, Magistrate J.). This careful analysis led Magistrate Judge Delgado-Colon to conclude that "[t]he legislative history of the statute, particularly as to Title II, suffers from the same deficiencies identified by the Supreme Court in *Kimel* [v. *Florida Board of Regents*, 528 U.S. 62 (2000)] and *Garrett*." *Id.* at *10; *see also id.* at *11 (concluding that "Congress exceeded its authority in abrogating the States' Eleventh Amendment immunity in suits brought pursuant to Title II of the ADA").

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL J. HASON, M.D.,
    *Plaintiff-Appellant,*

v.

MEDICAL BOARD OF CALIFORNIA; DEPARTMENT OF CONSUMER AFFAIRS, STATE OF CALIFORNIA; ARLENE ADAMS, the Director of the Department of Consumer Affairs of the State of California; NEIL FIPPIN, individually, & as the Manager, Licensing Program of the Medical Board of the State of California; MELINDA ACOSTA, individually & as an official of the Medical Board of the State of California; RON JOSEPH, individually & as Executive Director of the Medical Board of the State of California & as Director of the Department of Consumer Affairs of the State of California; BRUCE HASENKAMP, individually & as President of the Division of Licensing of the Medical Board of the State of California; IRA LUBELL, M.D., individually & as President of the Division of Medical Quality of the Medical Board of the State of California; CAROLE H. HURVITZ;

No. 00-55784

D.C. No.
CV-99-04264-AHM

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY WEST GROUP—SAN FRANCISCO—(800) 888-3600

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2002 by West Group.

ANABEL A. IMBERT; RAQUEL D. ARIAS, Dr.; KLEA D. BERTAKIS, Dr.; JACK BRUNER, DR.; DANIEL LIVINGSTON; KAREN MCELLIOT; ALAN E. SHUMACHER, Dr.; KIP S. SKIDMORE, individually & as Member of the Medical Board of the State of California's Division of Medical Quality; THOMAS A. JOAS, Dr.; KAREN MCELLIOTT, individually & as Officer of the Medical Board of the State of California & its Division of Licensing; BERNARD ALPERT, individually & as Officer of the Medical Board of the State of California & its Division of Licensing; MICHAEL I. SIDLEY, individually & as Executive of the Medical Board of the State of California's Division of Licensing; RAJA TOKE, Dr., individually & as Executive of the Medical Board of the State of California's Division of Licensing; THE STATE OF CALIFORNIA & SENIOR INVESTIGATOR,
                    *Defendants-Appellees.*

out prejudice upon the court's own initiative with notice to the plaintiff. The magistrate judge noted that Dr. Hason failed to effectuate service of process on the named individual defendants within 120 days after the filing of his complaint. Dr. Hason also failed to respond to an order to show cause why service had not been made within the 120 day period.

Dr. Hason does not dispute these facts. Rather, he argues that he had determined that the individual defendants were not liable and that he wanted them to be dismissed as defendants. He assumed that he was furthering this goal and helping the court by not responding to the order to show cause. However, when it became clear that the state agencies were going to be dismissed as defendants, Dr. Hason decided that he no longer wanted the individual defendants to be dismissed. Dr. Hason's argument lacks merit, and we conclude that the District Court did not abuse its discretion in dismissing, for failure to prosecute, Dr. Hason's claims against the individual defendants in their personal capacities.

IV.  Conclusion

[5] In conclusion, we hold that (1) Dr. Hason's Title II claims are not barred by the Eleventh Amendment; (2) Dr. Hason's section 1983 claims seeking prospective injunctive relief against the individual defendants in their official capacities are not barred by the Eleventh Amendment; (3) Dr. Hason states valid claims under Title II of the ADA; and (4) the District Court did not abuse its discretion in dismissing for failure to prosecute Dr. Hason's claims against the individual defendants in their personal capacities.

We accordingly remand to the District Court for consideration of the merits of Dr. Hason's ADA claims. The District Court did not rule on the merits of Dr. Hason's section 1983 claims, so they too must be remanded.

REVERSED and REMANDED.

motion to dismiss. In response, Appellees contend that Dr. Hason is not a "qualified individual with a disability" because Dr. Hason admits in his pleadings that he suffers from a mental disability.

Although at a later stage in the proceedings Appellees might demonstrate that Dr. Hason is not a qualified individual with a disability, they have not yet done so. Appellees are correct that Dr. Hason states in his complaint that he suffers from a mental disability. Dr. Hason's complaint also alleges, however, that by the time of the Medical Board's decision he had received treatment for his disability and was capable of practicing medicine. Accepting these allegations as true and construing them in the light most favorable to Dr. Hason, we conclude that Dr. Hason adequately alleges that he is a qualified individual with a disability. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989) (stating that, in reviewing district court's dismissal for failure to state a claim pursuant to Rule 12(b)(6), appellate court accepts plaintiff's allegations as true and construes complaint in light most favorable to plaintiff).

For the foregoing reasons, we conclude that Dr. Hason states claims for which relief can be granted under Title II of the ADA. The District Court erred in dismissing his complaint pursuant to Rule 12(b)(6).

III. Failure to Prosecute

Dr. Hason next argues that the District Court abused its discretion in dismissing his claims, for failure to prosecute, against the individual defendants in their personal capacities. In recommending that Appellant's suit be dismissed for failure to prosecute, the magistrate judge relied on Federal Rule of Civil Procedure 4(m). Rule 4(m) provides that, if process is not served within 120 days after the filing of the complaint, and the plaintiff cannot show good cause why service was not made within that time, the action is subject to dismissal with-

MICHAEL J. HASON, M.D.,
    *Plaintiff-Appellant*,

v.

MEDICAL BOARD OF THE STATE OF CALIFORNIA; DEPARTMENT OF CONSUMER AFFAIRS, STATE OF CALIFORNIA; ARLENE ADAMS, the Director of the Department of Consumer Affairs of the State of California; NEIL FIPPIN, individually and as the Manager, Licensing Program of the Medical Board of the State of California; MELINDA ACOSTA, individually and as an official of the Medical Board of the State of California; RON JOSEPH, individually and as Executive Director of the Medical Board of the State of California and as Director of the Department of Consumer Affairs of the State of California; BRUCE HASENKAMP, individually and as President of the Division of Licensing of the Medical Board of the State of California; IRA LUBELL, M.D., individually and as President of the Division of Medical Quality of the Medical Board of the State of California; CAROLE H. HURVITZ;

No. 00-55980
D.C. No.
CV-99-04264-AHM
OPINION

ANABEL A. IMBERT; RAQUEL D. ARIAS, M.D.; KLEA D. BERTAKIS, M.D.; JACK BRUNER, M.D.; DANIEL LIVINGSTON; KAREN MCELLIOTT; ALAN E. SCHUMACHER, M.D.; KIP S. SKIDMORE, individually and as Members of the Medical Board of the State of California's Division of Medical Quality; THOMAS A. JOAS, M.D.; KAREN MCELLIOTT, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; BERNARD ALPERT, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; MICHAEL I. SIDLEY, individually and as Executive of the Medical Board of the State of California's Division of Licensing; RAJA TOKE, M.D., individually and as Executive of the Medical Board of the State of California's Division of Licensing; THE STATE OF CALIFORNIA; SENIOR INVESTIGATOR; MEDICAL BOARD OF CALIFORNIA,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
November 6, 2001—Pasadena, California

The second major reason given by the magistrate judge for dismissing Dr. Hason's Title II claims was that Dr. Hason was not a "qualified individual with a disability" within the meaning of Title II of the ADA. Title II defines this requirement as follows:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

Dr. Hason argues that the District Court erred in accepting the magistrate judge's conclusion because the question of whether Dr. Hason is a qualified individual with a disability is a factual question that should not be resolved on a 12(b)(6)

---

states a claim under Title II of the ADA. As noted above, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination by any such entity*." 42 U.S.C. § 12132 (emphasis added). Dr. Hason construes the second clause of Title II (i.e. "or be subjected to discrimination by any such entity") as providing a blanket cause of action for any type of discrimination by a public entity, including discrimination not related to the services, programs or activities of a public entity. Because we conclude that medical licensing is a service, program, or activity of a public entity within the meaning of Title II, we need not reach the merits of Dr. Hason's argument. For the sake of clarity, however, we note that in *Zimmerman* we ruled out Dr. Hason's proposed construction of the second clause of Title II. *See Zimmerman*, 170 F.3d at 1176 (concluding that the second clause of Title II, like the first, prohibits discrimination only in a public entity's outputs).

2532   HASON v. MEDICAL BOARD OF CALIFORNIA

[3] We are not persuaded by Appellees' argument. Viewed in the light of the *Zimmerman* framework, medical licensing is an output of a public agency, not an input such as employment. The act of licensing involves the Medical Board (i.e. a "public agency") providing a license (i.e. providing a "service") to an applicant for a medical license. Although medical licensing does occur within the employment context, medical licensing is not equivalent to employment. The Medical Board does not make employment decisions, and the Board's grant of a license is not tantamount to a promise or guarantee of employment as a physician.

[4] Furthermore, the magistrate judge's narrow construction of the phrase "services, programs, or activities" is at odds with the remedial goals underlying the ADA. *See Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 861 (1st Cir. 1998) (observing that the ADA is a remedial statute which should be construed broadly); *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996) (same); *see also Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (recognizing the "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"). Courts must construe the language of the ADA broadly in order to effectively implement the ADA's fundamental purpose of "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Arnold*, 136 F.3d at 861 (quoting 42 U.S.C. § 12101(b)(1) (1994)). In fact, this court has already capitalized upon the opportunity to construe broadly the language of Title II. In *Lee v. City of Los Angeles* we stated in the Title II context that "the ADA's broad language brings within its scope anything a public entity does." *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (citation and internal quotations omitted). Medical licensing is without a doubt something that the Medical Board "does." As such, we conclude that medical licensing clearly falls within the scope of Title II.[3]

---

[3] Dr. Hason also argues that, regardless of whether a medical license constitutes a service, program, or activity of a public entity, his complaint

HASON v. MEDICAL BOARD OF CALIFORNIA   2525

Filed February 12, 2002

Before: Alfred T. Goodwin, J. Clifford Wallace and Sidney R. Thomas, Circuit Judges.

Opinion by Judge Goodwin

---

## SUMMARY

### Individual Rights/Disabilities

The court of appeals reversed a judgment of the district court. The court held that medical licensing is an "output" of a public agency that falls within the scope of Title II of the Americans with Disabilities Act (ADA).

Appellant Michael Hason, M.D., applied for a license to practice medicine in the state of California. The California Medical Board denied, for reasons of mental illness, Hason's application. Hason subsequently filed a pro se complaint in federal district court seeking damages and injunctive relief, alleging violations of his rights under the United States Constitution and Title II of the ADA. Hason's complaint named appellees the Medical Board of the State of California, the Department of Consumer Affairs of the State of California and its director, and various other individuals that were either members of or otherwise affiliated with the Medical Board (in both their official and personal capacities). The Medical Board contended that medical licensing did not fall within the scope of Title II because medical licensing is not an "output" of a public agency because it is a service provided for the benefit of the public at large, not for the benefit of applicants seeking to obtain medical licenses. The magistrate judge recommended dismissal of the claim, based in part on Hason's failure to state a claim upon which relief could be granted under Title II of the ADA. The district court dismissed

Hason's complaint finding, among other things, the denial of a medical license could not be challenged under Title II of the ADA because a medical license does not constitute "services, programs, or activities of a public entity."

Hason appealed.

[1] Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. [2] Congress intended for Title II to apply only to the "outputs" of a public agency, not to "inputs" such as employment.

[3] Medical licensing is an output of a public agency, not an input such as employment. The act of licensing involves the Medical Board, a public agency, providing a license (i.e. providing a "service") to an applicant for a medical license. Although medical licensing does occur within the employment context, medical licensing is not equivalent to employment. The Medical Board does not make employment decisions, and the Board's grant of a license is not tantamount to a promise or guarantee of employment as a physician. [4] Courts must construe the language of the ADA broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. In the Title II context, the ADA's broad language brings within its scope anything a public entity does. Medical licensing is something that the Medical Board "does." As such, medical licensing fell within the scope of Title II. [5] Thus, Dr. Hanson stated a valid claim under Title II of the ADA.

## COUNSEL

Erwin Chemerinsky, University of Southern California Law School, Los Angeles, California, for the plaintiff-appellant.

[2] In response, Appellees argue that Title II was not intended to apply to professional licensing. Appellees rely primarily on *Zimmerman v. Oregon Department of Justice*, 170 F.3d 1169 (9th Cir. 1999). In *Zimmerman*, the plaintiff brought an action against his employer alleging that the employer's practices discriminated against him in violation of Title II of the ADA. This Court affirmed the district court's holding that Title II of the ADA does not apply to employment. *See id.* at 1184. In doing so, we conducted a thorough examination of both the wording of Title II and the structure of the ADA, concluding that Congress intended for Title II to apply only to the "outputs" of a public agency, not to "inputs" such as employment. *See id.* at 1173-79.[2]

Relying on *Zimmerman*, Appellees contend that medical licensing does not fall within the scope of Title II because medical licensing is not an "output" of a public agency. According to Appellees, medical licensing is not an "output" because it is a service provided for the benefit of the *public at large*, not for the benefit of *applicants* seeking to obtain medical licenses. *See Alexander v. Margolis*, 921 F. Supp. 482, 488 (W.D. Mich. 1995) (observing that "[t]he Board of Medicine is, if anything, a service, program or activity provided for the public's benefit and safety, not for the benefit of any given individual who does not meet the state's requirements for practicing medicine").

---

[2]The *Zimmerman* court illuminated the "input"/"output" distinction with the following example: "[C]onsider how a member of the public would answer the question, 'What are the services, programs, and activities of the Parks Department in which you want to participate, or whose benefits you seek to receive?' The individual might answer, 'I want to participate in the Wednesday night basketball league, or find out about the free children's programs for the summer months.' The individual would not logically answer, 'I want to go to work for the Parks Department.'" *Zimmerman*, 170 F.3d at 1174. The *Zimmerman* court considered both the basketball league and the children's programs to be "outputs," and it considered an individual going to work for the Parks Department to be an "input."

and Health Ctr. v. Belshe, 188 F.3d 1090, 1095 (9th Cir. 1999); Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). Dr. Hason's complaint clearly seeks prospective injunctive relief to enjoin the individual defendants' refusal to issue Dr. Hason a medical license. Thus, under the doctrine of Ex Parte Young, Dr. Hason's section 1983 claims seeking prospective injunctive relief from the individual defendants are not barred by the Eleventh Amendment. The District Court erred in concluding otherwise.

## II. Title II of the ADA

[1] We next consider the District Court's dismissal of Dr. Hason's complaint for failure to state a claim for which relief can be granted under Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The District Court dismissed Dr. Hason's complaint based on the magistrate judge's two-fold conclusion that (1) the denial of a medical license cannot be challenged under Title II of the ADA because a medical license does not constitute "services, programs, or activities of a public entity" and (2) Dr. Hason is not a "qualified individual with a disability" within the meaning of Title II of the ADA.

With respect to the first of the two above grounds for dismissal, Dr. Hason contends that his complaint properly states a claim because a medical license constitutes "services, programs, or activities of a public entity" under Title II. Dr. Hason argues that the magistrate judge's interpretation of the phrase "services, programs, or activities" to exclude medical licensing is at odds with both the plain language and remedial goals of Title II.

Joel A. Davis, Supervising Deputy Attorney General, Los Angeles, California, for the defendants-appellees.

## OPINION

GOODWIN, Circuit Judge:

Dr. Michael J. Hason appeals the dismissal of his pro se complaint alleging discrimination based on disability in violation of the United States Constitution and Title II of the Americans with Disabilities Act ["ADA"]. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow we reverse and remand.

## BACKGROUND

In March of 1995, Michael J. Hason, M.D., applied for a license to practice medicine in the state of California. In April of 1998, the California Medical Board denied, for reasons of mental illness, Dr. Hason's application for a medical license. Dr. Hason subsequently filed a pro se complaint in federal district court alleging violations of his rights under the United States Constitution (brought pursuant to 42 U.S.C. § 1983) and Title II of the ADA, 42 U.S.C. § 12132. The complaint also alleged state law tort claims which are not at issue on this appeal.

Dr. Hason's complaint named as defendants The Medical Board of the State of California ["The Medical Board"], the Department of Consumer Affairs of the State of California and its director, and various other individuals that were either members of or otherwise affiliated with the Medical Board (in both their official and personal capacities). Dr. Hason sought both damages and injunctive relief.

On April 25, 2000, the District Court dismissed Dr. Hason's complaint without prejudice as to the individual

defendants in their personal capacities, and with prejudice as to the two named state agencies and the individual defendants in their official capacities. The Report and Recommendation of the United States Magistrate Judge, which was affirmed in its entirety by the District Court, stated three reasons for dismissing Dr. Hason's complaint. First, the Report concluded that Dr. Hason's claims were barred by the Eleventh Amendment. Second, the Report concluded that Dr. Hason failed to state a claim upon which relief could be granted under Title II of the ADA. Third, the Report concluded that Dr. Hason's claims against the individual defendants in their personal capacities should be dismissed for failure to prosecute.

We review de novo the District Court's dismissal of a complaint for failure to state a claim upon which relief can be granted. See *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## DISCUSSION

### I. Sovereign Immunity

We begin by considering whether the District Court erred in holding that Dr. Hason's claims were barred by the Eleventh Amendment. The Eleventh Amendment prohibits a private party from suing a nonconsenting state or its agencies in federal court.[1] See *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). The Eleventh Amendment does not, however, prevent a private litigant from suing a state or its agencies in federal court where Congress has abrogated state

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

sovereign immunity acting pursuant to section 5 of the Fourteenth Amendment. We have previously held that in enacting Title II of the ADA Congress validly abrogated state sovereign immunity, and thus states and their agencies may be sued pursuant to Title II. See *Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999); *Clark v. California*, 123 F.3d 1267, 1270-71 (9th Cir. 1997); *see also Patricia v. Lemahieu*, 141 F. Supp.2d 1243, 1248 (D. Haw. 2001) (observing that the Ninth Circuit has twice rejected the argument that Congress exceeded its constitutional authority in abrogating state sovereign immunity pursuant to Title II of the ADA).

Appellees contend, however, that the Supreme Court's recent decision in *Garrett* overrules both *Clark* and *Dare*. In *Garrett*, the Court held that Congress did not validly abrogate state sovereign immunity in enacting *Title I* of the ADA. See *Garrett*, 531 U.S. at 360. The *Garrett* Court expressly declined to decide whether Congress validly abrogated state sovereign immunity in enacting *Title II* of the ADA. See *id.* at 360 n.1. We therefore conclude that *Garrett* does not overrule either *Clark* or *Dare*, and that the Eleventh Amendment does not bar Dr. Hason's Title II claims.

The District Court also erred in its treatment of Dr. Hason's federal civil rights claims, brought pursuant to 42 U.S.C. § 1983, against the various individual state officials. The District Court held that Dr. Hason's section 1983 claims were barred by the Eleventh Amendment. In so holding, the District Court failed to recognize the long-established exception to Eleventh Amendment immunity carved out by *Ex Parte Young*, 209 U.S. 123 (1908). The *Ex Parte Young* doctrine provides that the Eleventh Amendment does not bar suits for prospective injunctive relief brought against state officers "in their official capacities, to enjoin an alleged ongoing violation of federal law." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Seminole Tribe of Florida*, 517 U.S. at 73; *Children's Hosp.*